UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 17-22558-CIV-O'SULLIVAN

JORGE MOREJON,

    Plaintiff,

vs.

LOUISVILLE LADDER, INC.,

    Defendant.
    _____/

## DEFENDANT'S MOTIONS IN LIMINE AND INCORPORATED MEMORANDUM OF LAW

Defendant, LOUISVILLE LADDER, INC. ("Defendant" or "Louisville Ladder"), by and through undersigned counsel, and pursuant to the Federal Rules of Civil Procedure and the applicable Local Rules for the Southern District of Florida, hereby files its Motions in Limine, and in support thereof, states, as follows:

## INTRODUCTION

This lawsuit arises from an October 29, 2015 incident in which Plaintiff, JORGE MOREJON ("Plaintiff"), alleges to have fallen from a sixteen foot extension ladder, model no. L-2324-16, manufactured by Louisville Ladder. *See* [D.E. 1-3]. Plaintiff contends that while he was working on the roof of a property located at 3010 S.W. 77th Place in Miami-Dade County, Florida, he descended the subject ladder, which "slid out from underneath him." *See* [D.E. 1-3 at ¶10]. In Plaintiff's Amended Complaint, Plaintiff asserts two causes of action against Louisville Ladder, Count I – Strict Liability (Defective Design) and Count II- Strict Liability (Negligence). *See* [D.E. 1-3].

Based on the claims at issue to be decided by the jury, Louisville Ladder respectfully requests the Court to exclude or limit evidence as described below.

## MEMORANDUM OF LAW AND ARGUMENT

A motion in limine refers to "any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n. 2 (1984). The purpose of a motion in limine is "to give the trial judge notice of movant's position so as to avoid the introduction of damaging evidence, which may irretrievably affect the fairness of the trial." *Smith v. Royal Caribbean Cruise, Ltd*., 2014 WL 5312534 *1 (S.D. Fla. October 10, 2014) (citations omitted). District courts have the authority to rule on motions in limine pursuant to their inherent authority to manage trials, even though such rulings are not explicitly authorized by the Federal Rules of Evidence. *Luce,* 469 U.S. at 41 n.4. District courts have broad discretion in ruling on motions in limine. *See e.g., Fisher v. Carnival Corp.*, 2013 WL 2157164 *2 (S.D. Fla. May 17, 2013).

"Evidence is relevant if: (a) it has any tendency to make a fact more probable or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "Irrelevant evidence is not admissible." Fed. R. Evid. 402. A court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: "unfair prejudice; confusing the issues; misleading the jury; undue delay; wasting time; or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

In light of the foregoing, Louisville Ladder moves to exclude or limit the following evidence at trial.

### a. Motion to exclude Plaintiff's future lost wage and/or earning capacity claim

Louisville Ladder anticipates that Plaintiff may attempt to assert a future lost wage and/or earning capacity claim at trial. In Plaintiff's response to Louisville Ladder's Interrogatories, when asked about a future lost wage and/or earning capacity claim, Plaintiff responded, as follows:

> I have not lost income or benefits, however, I reserve my right to claim lost earning capacity in the future due to disability as a result of my injuries. Once that determination has been made I will update this answer.

*See* Plaintiff's responses to Louisville Ladder's Interrogatories, dated November 7, 2016, attached hereto as Ex. "A". Despite this, Plaintiff has not disclosed a vocational expert to testify regarding whether Plaintiff is disabled from his alleged injuries or regarding his future employability, nor has Plaintiff retained an economist to calculate or project Plaintiff's future wages. *See* Plaintiff's Witness List attached hereto as Exhibit "B".

Moreover, at deposition Plaintiff testified that no doctor has told him that he cannot physically do work-related things that he could do before the accident. *See* Plaintiff's Dep., dated February 22, 2017, p.73:9-73:15, attached hereto as Exhibit "C". He further testified, as follows:

> Q. Okay so all we know is that since October 29, 2015 until February 22nd 2017, you have no basis to say that in that time frame you've lost the capacity to earn income. Since the date of this accident compared to before the date of the accident, fair statement?
>
> A. I don't understand.
>
> Q. Yeah it was a complicated question. Up until now you haven't lost the capacity to earn income since the date of the accident, like you were earning before the date of the accident, right?
>
> A. You mean whether the income now is the same as before the accident?
>
> Q. Correct.

> A. Yes.
>
> …
>
> Q. Okay would you agree with me that as you sit here today, it would be entirely speculative as to whether or not you would actually lose that earning capacity in the future?
>
> A. Yes.

*See* Ex. "C" at p. 72:1-72:14; 75:6-75:10. Plaintiff is a plumber by trade. *Id*. at pp. 25:24-26:2. According to his deposition testimony, he earns the same amount of money that he earned prior to the alleged accident. *Id.* at 26:17-27:3. His employer has not demoted him since the alleged accident. *Id*. at pp. 31:16-31:17. He still works five days a week as a plumber, eight hours a day. *Id*. at pp. 34:22-35:9; 37:27-38:3. If he is required to work more than five days a week, he is still paid overtime. *Id*.

This is not a case where Plaintiff can reliably testify as to his future lost wage and/or earning capacity claim. Plaintiff's earnings have not decreased since the alleged accident, and there is no evidence that he cannot work or is permanently disabled. Plaintiff has designated no experts to support his future lost wage and/or earning capacity claim, even though courts have instructed that expert testimony is helpful, if not essential, in cases like this one. *See e.g. Dempsey v. Mac Towing, Inc.*, 876 F.2d 1538, 1541 (11th Cir. 1989) (noting the "need for expert testimony" to prove the plaintiff's future wage loss claim); *Deakle v. John E. Graham & Sons*, 756 F. 2d 821, 826-834 (11th Cir. 1985) (providing extensive discussion of proof necessary for calculation of future lost wages and instructing litigants to be "attentive" to these issues at trial).

In light of Plaintiff's own testimony and lack of any expert testimony on the issue, Plaintiff's claim for future lost wages and/or lost earning capacity is purely speculative, without foundation, and should not be permitted into evidence at trial.

**b. Motion to exclude other accidents, claims or lawsuits**

Based on the discovery Plaintiff propounded in this lawsuit, Louisville Ladder anticipates that Plaintiff may attempt to introduce evidence concerning other accidents, claims, or lawsuits involving the extension ladder manufactured by it. It is anticipated that Plaintiff may try to introduce this evidence through deposition testimony, interrogatory responses, copies of complaints, or combination thereof. However, this evidence is inadmissible in any of these forms and should be excluded from trial. Other complaints, including legal complaints filed in other lawsuits, is inadmissible hearsay. Fed. R. Evid. 801(c), 802. Legal complaints constitute blatant, multiple hearsay, which is only admissible if each separate hearsay component falls within an exception to the general prohibition on hearsay. Fed. R. Evid. 805; *see also Johnson v. Ford Motor Company*, 988 F.2d 573 (5th Cir. 1993).

Additionally, in a products defect case, the introduction of other claims or accidents may only be allowed if the claims or accidents are "substantially similar" and the events occurred within a reasonably close proximity in time. *See Hessen v. Jaguar Cars*, 915 F.2d 641, 649 (11th Cir. 1990); *Jones v. Otis Elevator Co.*, 861 F.2d 655, 661-662 (11th Cir. 1988); *Borden, Inc. v. Florida E.C.R. Co.,* 772 F.2d 750, 755 (11th Cir. 1985) . Therefore, Plaintiff must establish and meet their burden by showing that all other incidents Plaintiff seeks to introduce are "substantially similar" to the conditions involved in his alleged accident, and that those other incidents are not too remote in time. *Hessen*, 915 F.2d at 649. This foundational showing must be made through specific acts so that the Court can determine if the other incidents actually meet this burden. In this case, Plaintiff cannot meet his burden of showing that other accidents, claims or lawsuits are substantially similar. The mere fact that there may have been other accidents with

a Louisville Ladder ladder in no way arises to the substantially similar requirement for admissibility.

Even if Plaintiff can show that the other accidents, claims, or lawsuits are substantially similar to Plaintiff's own alleged accident, such evidence should not be admitted because the minimal probative value of the evidence would greatly outweigh the danger of prejudice that admission of such evidence would create. Fed. R. Evid. 403. The admission of evidence concerning other accidents, claims, or lawsuits would likely necessitate the presentation of evidence about facts not involved in this case and thereby mislead and confuse the jury, and it would divert substantial time and effort during trial of this matter and would impact the effectiveness of the issues in this case as they were properly presented to the jury. *See Burford v. Howe*, 10 F.3d 1184 (5th Cir. 1994) (trial court properly excluded "other act" evidence as unduly prejudicial notwithstanding relevancy of such evidence). As such, Plaintiff should not be able to litigate collateral issues such as evidence of any other accidents, claims or lawsuits.

  **c. Motion to exclude testimony or evidence that the subject ladder is not safe or a walk-through device will make the subject ladder safer**

Defendant anticipates that Plaintiff's proffered expert, Oren Masory, Ph.D.[1] will attempt to testify that the subject ladder is not "safe" or a walk-through device will make the ladder "safer". *See* Oren Masory, Ph.D., Dep., dated November 27, 2017, pp.66:13-66:23; 67:9-67:12; 68:8-68:15, attached hereto as Exhibit "D". However, whether the ladder is safe or unsafe is not the proper legal standard.

Under Florida products liability law, the manufacturer or seller of a product is not the insurer of the safety of that product. *See West v. Catepillar Tractor Co.*, 336 So.2d 80, 86 (Fla.

---

[1] Louisville Ladder has filed a separate *Daubert* Motion to exclude or limit the testimony of Dr. Masory. To the extent applicable, Louisville Ladder adopts the arguments in said Motion herein.

1976). Plaintiff must prove that the product, here, a ladder, is "defective or created an unreasonably dangerous condition." *See Benetiz v. Synthes, Inc*., 199 F. Supp.2d 1339, 1343 (M.D. Fla. March 27, 2002); *Hernandez v. Altec Environmental Products, LLC*, 903 F.Supp.2d 1350, 1357 (S.D. Fla. October 1, 2012). Therefore, Plaintiff cannot prove a defect simply by virtue of the fact that an accident has occurred or that someone has been injured. *See Lash v. Noland*, 321 So.2d 104 (Fla. 4th DCA 1975).

The determination as to whether a product is "unreasonably dangerous" necessarily involves a very case-specific analysis. Dr. Masory's opinion as to whether use of the ladder is safe or not as opposed to whether the ladder has an alleged defect is misplaced, the incorrect standard, and not specifically relevant to the facts of this case. Testimony regarding whether the subject ladder is safe should not be admitted as it is irrelevant and of minimal probative value, which is greatly outweighed by the danger of prejudice and confusion of the issues. *See* Fed. R. Evid. 402, 403. Consequently, any testimony or evidence that the subject ladder is not "safe" or that a walk-through device will make it "safer" is inadmissible and should be precluded from trial.

### d. Motion to exclude treating physicians from testifying as to causation or prognosis

Louisville Ladder anticipates that Plaintiff will call treating physicians and other medical professionals, who will testify regarding Plaintiff's claimed medical condition. The treating physicians may testify regarding their examinations and diagnoses. However, Plaintiff should be precluded from eliciting "causation and prognosis opinions" from his physicians pursuant to Fed. R. Evid. 702. Treating physicians not disclosed as experts under Fed. R. Civ. P. 26 may not testify on matters beyond the facts disclosed during the care and treatment of the patient. *See e.g*. *Schneider v. Hertz Corp*., 2007 WL 1362743 (M.D. Fla. May 7, 2007).

Plaintiff's physician Arturo Corces, M.D. speculated in his deposition that the cause of Plaintiff's osteoarthritis was due to the alleged incident. *See* Arturo Corces, M.D. Dep., dated December 5, 2017, p. 36:14-36:23, attached hereto as Exhibit "E". Later, he stated that he could not determine the cause of Plaintiff's degenerative osteoarthritis, which is likely the reason for Plaintiff's antalgic gait. *See* Ex. "E" at pp. 25:3-25:6; 33:24-33:2; 51:17-51:20. Dr. Corces further opined that Plaintiff's prognosis is "guarded" and that he may need a hip replacement in five to 10 years. *See* Ex. "E" at pp.38:20-39:4. However, Dr. Corces can only speculate as to whether Plaintiff will need a hip replacement in the future, because Plaintiff's alleged degenerative hip condition could remain stable. *Id*. at pp. 29:13-29:19; 39:21-39:25.

Toward that end, a treating physician cannot present testimony on the issue of causation unless the determination of causation was necessary for treatment. *Schneider,* 2007 WL 1362743. at *1. A treating physician is not an "'expert witness' if he or she testifies about observations based on personal knowledge, including treatment of a party." *Principi v. Survivair*, 231 F.R.D. 685, 692 (M.D. Fla. October 18, 2005). Therefore, a treating physician may offer testimony about diagnosis, treatment and prognosis only if it is in the physician's records; however, when the physician offers testimony regarding the cause of the plaintiff's condition, the physician "crosses over to the field of expert testimony." *Id*; *see also U.S. v. Henderson*, 409 F.3d 1293, 1300 (11th Cir. 2005) (treating physician impermissibly offered expert testimony on causation, where determining causation was not necessary to either diagnosis or treatment). In this case, Plaintiff may not circumvent the requirements of Rule 26 by employing a treating physician to provide testimony which extends into expert opinion regarding causation, or prognosis not reported in the physician's records, and the Court should preclude such testimony or evidence from the trial.

e. **Location of Product Manufacture in Mexico**

The subject ladder is manufactured in Monterrey, Mexico. *See* Thomas Schmitt Dep., dated May 10, 2017, pp.21:18-22:2 attached hereto as Exhibit "F". Louisville Ladder anticipates that Plaintiff may attempt to offer evidence of the geographic location of the subject ladder's country of origin. Courts have repeatedly precluded this type of evidence and testimony because of "the risk of racial or ethnic stereotyping is substantial, appealing to bias, guilt by association and even xenophobia." *Jinro America, Inc. v. Secure Investments, Inc*., 266 F.3d 993 (9th Cir. 2001).

References to Mexico, or suggestions of inferior Mexican manufacturing processes, have no relevance, and thus would serve only to inflame the jury and distract them from their sworn duty to evaluate the substantive evidence actually and properly presented. *See Arlington Industries, Inc. v. Bridgeport Fittings, Inc*., 2009 WL 2950644 (M.D. Pa. September 9, 2009) (excluding evidence that product was manufactured in China as not relevant to any issues in dispute). Evidence of the country of origin in this case is irrelevant to the facts at issue and would only serve to unfairly prejudice Louisville Ladder, especially in light of the fact that Plaintiff contends that all extension ladders are defective because they do not have a walk-through device. *See* Fed. R. Evid. 401, 403; see also Ex. "D" at pp.66:13-66:23; 67:9-67:12; 68:8-68:15. Accordingly, all evidence of this nature should be precluded from the trial.

**WHEREFORE**, for all of the foregoing reasons, Defendant, LOUISVILLE LADDER, INC., respectfully submits that the Honorable Court exclude or limit the above testimony or evidence from trial, and for such other relief the Court deems just and proper.

## CERTIFICATE OF PRE-FILING CONFERENCE

Pursuant to Local Rule 7.1(a)(3), the undersigned certifies that he attempted to communicate with counsel for Plaintiff, JORGE MOREJON, in an attempt to resolve the issues raised in this Motion(s). Counsel for Plaintiff did not respond to the undersigned's email in this regard.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 15th day of February 2018, I electronically filed the foregoing with the Court by using the CM/ECF system.  A copy of the foregoing has been furnished by e-mail to:

**Theodore J. Fournaris, Esq.**
FOURNARIS & SANET, P.A.
2100 Coral Way, Suite 300
Coral Gables, Florida 33145
ted@fournarissanet.com

and

**Robert L. Parks, Esq.**
**Gabriel Garay, Esq.**
THE LAW OFFICES
OF ROBERT L. PARKS, P.L
799 Brickell Plaza, Suite 900
Miami, Florida 33131
bob@rlplegal.com
gabe@rlplegal.com

*(Counsels for Plaintiff, Jorge Morejon)*

/s/ *Jens C. Ruiz*
SCOTT M. SARASON
Florida Bar No.: 0394718
E-mail:  ssarason@rumberger.com (primary)
docketingmiami@rumberger.com and
ssarasonsecy@rumberger.com (secondary)
JENS C. RUIZ
Florida Bar No. 96119
E-mail: jruiz@rumberger.com (primary)
docketingmiami@rumberger.com and
jruizsecy@rumberger.com (secondary)
RUMBERGER, KIRK, & CALDWELL, P.A.
Brickell City Tower, Suite 3000
80 Southwest 8th Street
Miami, Florida 33130-3037
Tel:  305.358.5577
Fax:  305.371.7580

*Attorney for Louisville Ladder, Inc.*

10920274.1